```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT
```

| | |
|---|---|
| CHRISTOPHER EVERSON, | : |
| | : |
|     Plaintiff, | : |
| | : |
| V. | :   CASE NO. 3:04-CV-387 (RNC) |
| | : |
| THERESA LANTZ, COMMISSIONER OF | : |
| CORRECTION; JOHN ARMSTRONG; | : |
| NELVIN LEVESTER; ROBERT CARBONE, | : |
| | : |
|     Defendants. | : |

### RULING AND ORDER

Plaintiff, a former employee of the Connecticut Department of Correction ("DOC"), brings this action pursuant to 42 U.S.C. § 1983 alleging that he was terminated in violation of his constitutional rights to procedural due process and equal protection. Defendants have moved for summary judgment, and plaintiff has filed a partial cross-motion for summary judgment. For the reasons that follow, summary judgment is granted for defendants on the due process and "class of one" equal protection claims but denied on the race-based equal protection claim.

I.   Facts

Plaintiff, an African-American male, began working as a correction officer at DOC in 1984. (Defs.' L. R. 56(a)1 Statement ¶ 1.) At the time of the incidents that led to his termination, he was not working because of a back injury and was receiving workers' compensation benefits. (Pl.'s L. R. 56(a)1

1

Statement ¶ 8.)  Defendant Levester was the warden at Webster Correctional Institution, where plaintiff was assigned to duty. (Pl.'s L. R. 56(a)1 Statement ¶¶ 4, 7.)  Defendant Carbone was an administrative captain at Webster Correctional Institution. (Defs.' L. R. 56(a)1 Statement ¶ 6.)  Defendant Armstrong was the commissioner of the Department of Correction.  (Defs.' L. R. 56(a)1 Statement ¶ 3.)  Defendant Lantz is the current commissioner and is sued in her official capacity only.  (Defs.' L.R. 56(a)1 Statement ¶ 2.)

On October 27, 2000, a state court judge ordered plaintiff to surrender all pistols and revolvers.  (See Defs.' L. R. 56(a)1 Statement ¶ 7.)  Hamden police officers subsequently executed a search warrant at plaintiff's home seeking pistols and revolvers that were known to be registered to him.  (Defs.' L. R. 56(a)1 Statement ¶ 9.)  According to the police report, plaintiff struck a police officer executing the warrant and resisted arrest, and the officers discovered 6.2 grams of marijuana, rolling papers, and four marijuana roaches in a closet.  (See Defs.' Ex. 3.) Plaintiff was arrested for interfering with execution of the search warrant, disorderly conduct, assault on a police officer, possession of marijuana, and possession of drug paraphernalia. (Defs.' L. R. 56(a)1 Statement ¶ 11.)  Assault on a police officer is a felony.  See Conn. Gen. Stat. § 53a-167c.  Plaintiff promptly reported the arrest to the DOC, and an investigation was

commenced. (Defs.' L. R. 56(a)1 Statement ¶¶ 15-19.) In May 2001, plaintiff was granted accelerated rehabilitation. In January 2003, the charges were dismissed following a period of probation. (Defs.' L. R. 56(a)1 Statement ¶ 47.)

On November 21, 2000, plaintiff was arrested on a warrant charging him with threatening, harassment, sexual assault, and criminal attempt to commit sexual assault. (Defs.' L. R. 56(a)1 Statement ¶ 21.) Plaintiff reported this arrest to the DOC, and an investigation was commenced. (Defs.' L. R. 56(a)1 Statement ¶¶ 22-24.) The charges were nolled in December 2001. (Defs.' L. R. 56(a)1 Statement ¶ 46.)

On January 10, 2001, defendant Carbone submitted to defendant Levester investigation reports covering the two arrests. (See Defs.' L. R. 56(a)1 Statement ¶¶ 25-26, 30-31.) In the course of his investigations, Carbone did not interview anyone other than the plaintiff. (Pl.'s L. R. 56(a)1 Statement ¶¶ 34-35.) He believed that the purpose of the investigations was to verify only the occurrence of the arrests, not the underlying conduct precipitating the arrests. (Def.'s L. R. 56(a)1 Statement ¶ 34.) He concluded that by virtue of plaintiff's arrests on warrants there existed probable cause that plaintiff had violated the Department's directive on employee conduct. (Defs.' L. R. 56(a)1 Statement ¶¶ 27, 32.) A letter was sent to plaintiff notifying him of a pre-disciplinary

conference. (Defs.' L. R. 56(a)1 Statement ¶ 35.) Plaintiff did not attend the conference. (Defs.' L. R. 56(a)1 Statement ¶ 36.) The conference was rescheduled twice. Plaintiff failed to appear both times despite numerous notifications by mail and phone. (Defs.' L. R. 56(a)1 Statement ¶¶ 37-38, 42-43.) Following the pre-disciplinary conference on March 8, 2001, plaintiff's employment was terminated for "just cause." (Defs.' L. R. 56(a)1 Statement ¶¶ 43-44.) Defendant Armstrong agreed with this decision. (Defs.' L. R. 56(a)1 Statement ¶ 40.)

Plaintiff grieved his dismissal in March 2001. (Defs.' L. R. 56(a)1 Statement ¶ 50.) The grievance was denied. (Defs.' L. R. 56(a)1 Statement ¶ 51.) The matter then proceeded to arbitration. On April 22, 2002, the arbitrator denied plaintiff's grievance and concluded that he had been terminated for just cause. (Defs.' L. R. 56(a)1 Statement ¶ 52.) Plaintiff commenced this action on March 5, 2004.

II. Discussion

Summary judgment may be granted only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that no genuine issue of material fact exists, and all reasonable inferences must be drawn in favor of the nonmoving party. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d

77, 83 (2d Cir. 2004).  Once the moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and point to evidence in the record showing a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Plaintiff asserts both procedural due process and equal protection claims.  He claims that defendants infringed his procedural due process rights by terminating him in violation of the Department's directives governing employee discipline and disciplinary investigations.[1]  He also claims that he was treated more harshly than similarly situated Caucasian and Hispanic employees in that he was terminated because of off-duty arrests before conviction on the resulting charges.  Defendants move for summary judgment on the ground that plaintiff has not adduced evidence to support these claims.  In addition, they contend that they are entitled to summary judgment based on qualified immunity.

    A.    Procedural Due Process

---

[1] Plaintiff alleges a variety of irregularities in the investigation of his misconduct and his termination.  For example, he alleges that defendant Carbone failed to interview relevant witnesses to the incidents, in violation of Directive 1.10 ¶ 5.b, and that he based his conclusion that plaintiff had engaged in misconduct solely on the fact of his arrests.  He also alleges that defendants Levester and Armstrong did not consider whether the investigation was conducted fairly or whether substantial evidence supported plaintiff's guilt when they recommended termination, in violation of Directive 2.6 ¶ 13.

A procedural due process claim comprises two inquiries. First, the court must determine whether the plaintiff has a protected property or liberty interest. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 & n.3 (1985). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Id. at 538 (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). The parties agree that plaintiff had a protected property interest in his continued employment because he could only be terminated for just cause. Second, the court must determine what process is due. Id. at 541. This inquiry is a matter of federal law and requires balancing the individual's interest, the government's interest, which involves its interest in avoiding administrative burdens, and the risk of erroneous deprivation. See id. at 541-43 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

In Loudermill, the Court defined what process is due before a state can deprive a public employee of a property interest in continued employment. After weighing the competing interests at stake, the Court concluded that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546. The pre-termination hearing need only be "a determination of whether there are

reasonable grounds to believe that the charges against the employee are true and support the proposed action" so long as the employee has recourse to a post-termination hearing.  Id. at 545-46.

Plaintiff appears to concede that defendants provided him with the process due under Loudermill.  (See Doc. #38 at 17.)  He argues instead that constitutional due process protections require an agency to follow its own internal rules when terminating employees, citing a line of cases originating in Service v. Dulles, 354 U.S. 363 (1957).  Plaintiff misconstrues these cases, which concern judicial review of federal agency action under principles of administrative law.  See Bd. of Curators v. Horowitz, 435 U.S. 78, 92 n.8 (1978) (holding that Service "enunciate[d] principles of federal administrative law rather than of constitutional law binding upon the States").  Plaintiff cites no case holding that due process requires a state agency to follow its own internal procedures when terminating an employee.  In fact, Loudermill held just the opposite: "The answer to [the] question [of how much process is due] is not to be found in the [state] statute."  470 U.S. at 541; see also McDarby v. Dinkins, 907 F.2d 1334, 1337-38 (2d Cir. 1990) ("When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of

7

procedural due process violations." (quoting Goodrich v. Newport News Sch. Bd., 743 F.2d 225, 227 (4th Cir. 1984))).[2]

The issue in a procedural due process claim is not whether the state decision was correct or complied with state procedural regulations. The Due Process Clause does not prohibit erroneous deprivations of property; it requires that a person being deprived of property receive due process. This Court's role is not to review the correctness of defendants' conclusion that just cause existed for plaintiff's termination under the directives; plaintiff already litigated this issue in arbitration. Because plaintiff has conceded that he received the process required

---

[2] As one opinion cited by plaintiff stated:

> It is not every disregard of its regulations by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions. . . .
>
> While courts have generally invalidated adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard, we conclude that the basis for such reversals is not . . . the Due Process Clause, but rather a rule of administrative law.

Bates v. Sponberg, 547 F.2d 325, 329-30 (6th Cir. 1976) (footnote omitted). Plaintiff has not articulated how defendants' alleged failure to follow their internal rules resulted in a procedure that itself impinged his rights. Rather, he broadly (and incorrectly) asserts that a state employee's due process rights are automatically violated when his employer does not follow its internal rules.

under Loudermill, he has failed to state a claim under the Due Process Clause.[3]

B.   Equal Protection

The crux of plaintiff's equal protection claim is that he was terminated before the criminal charges brought against him were resolved, whereas similarly situated Caucasian and Hispanic employees were not terminated until after they were convicted. Defendants argue that there is no issue of genuine fact regarding whether similarly situated employees were treated differently. I cannot agree.

"The Equal Protection Clause requires that the government treat all similarly situated people alike." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). A selective treatment claim under the Equal Protection Clause requires a showing that the plaintiff was treated differently from others similarly situated and that the selective treatment was based on impermissible considerations such as race. See Giordano v. City of N.Y., 274 F.3d 740, 750 (2d Cir. 2001). Alternatively, under a "class of one" theory, a plaintiff may

---

[3] Plaintiff argues that, because defendants allegedly terminated him for conduct that was not grounds for termination under the Department's directives, he lacked "notice" that he could be dismissed for such conduct. (See Doc. #38 at 10 n.9.) I do not understand plaintiff to be arguing that he lacked the notice required by Loudermill because plaintiff does not allege that he lacked notice of the charges against him in advance of his Loudermill hearing.

demonstrate that he was treated differently from others similarly situated and that there was no rational basis for the difference in treatment.  See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).[4]

A plaintiff must demonstrate that an employee with whom he seeks to be compared is "similarly situated in all material respects." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (quoting Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997)).[5]  The plaintiff and comparison employee need not be identical, but they must be "subject to the same workplace standards," and the conduct for which they were sanctioned must e be "of comparable seriousness." Id. at 40.  "The determination that two acts are of comparable seriousness requires – in addition to an examination of the acts – an examination of the context and surrounding circumstances in which those acts are evaluated." Id.  Whether individuals are similarly situated is thus usually an issue of fact for the jury.  See id. at 39; see also Harlen Assocs., 273 F.3d at 499 n.2 (whether individuals are similarly situated is generally an issue for the jury, but the

---

[4] The Second Circuit has not yet decided whether Olech requires a showing of malice or bad faith.  See, e.g., Bizzarro v. Miranda, 394 F.3d 82, 88 (2d Cir. 2005); Giordano, 274 F.3d at 750-51.

[5] Graham is a Title VII case but the Second Circuit applies the same "similarly situated" test in equal protection cases.  See, e.g., Harlen Assocs., 273 F.3d at 499 n.2.

issue can be decided on summary judgment "where it is clear that no reasonable jury could find the similarly situated prong met").

On the record before me, there are genuine issues of material fact regarding whether plaintiff was treated differently than similarly situated Caucasian and Hispanic employees. Defendants have submitted records allegedly showing that employees of all races were terminated both before and after conviction for felony and drug-related offenses. The records lack sufficient detail for me to conclude that these individuals were similarly situated to plaintiff. For example, many of the drug offenses resulting in termination involved possession of cocaine. As plaintiff argues, a rational jury could conclude that plaintiff was not similarly situated to employees arrested for cocaine possession because Connecticut law distinguishes between possession of narcotics such as cocaine and possession of less than four ounces of marijuana. See Conn. Gen. Stat. § 21a-279.[6] Similarly, it is debatable whether plaintiff should be

---

[6] Defendants have submitted various letters and other documents concerning disciplinary action taken against other officers to show that employees of all races have been terminated for felony and drug-related offenses before and after conviction. (See Defs.' Ex. 35.) My review of these documents revealed four explicit mentions of marijuana possession. An African-American, was terminated for off-duty possession of marijuana. (See Doc. #31 at 33.) Two Caucasians were terminated following marijuana-related offenses but were allowed to return to work pursuant to a stipulation. (See Doc. #31 at 13, 22.) A third Caucasian was terminated following an marijuana-related arrest but was subsequently allowed to resign in lieu of termination. (See Doc. #31 at 67.) A jury might or might not find these individuals

11

compared to individuals arrested for selling narcotics or possessing narcotics with intent to sell.  Moreover, I cannot discern from the records submitted by the defendants whether some employees were terminated pre- or post-conviction.

By contrast, plaintiff has identified several Caucasian and Hispanic employees whose employment was not terminated following a felony arrest.  For example, a white male with two arrests, one for a felony offense of risk of injury to a minor, was placed on administrative leave but not terminated.  (See Doc. #29 at 2.)  A Hispanic male was placed on leave following arrests for sexual assault and burglary; however, he was not terminated and was allowed to return to work following a "not guilty" verdict.  (See Doc. #29 at 17.)  Similarly, employees with drug-related arrests, some more serious than plaintiff's, were not terminated pre-conviction.  A white male arrested for possession and sale of a controlled substance was placed on leave and, pursuant to a stipulation, suspended for thirty days.  (See Doc. #29 at 19; Doc. #31 at 33.)  Another white male arrested for possession of marijuana was given a last chance stipulation.  (See Doc. #29 at 10; Doc. #31 at 14.)  It is conceivable that a reasonable jury could find these individuals similarly situated to plaintiff.

Because I find genuine issues of material fact going to

---

similarly situated to plaintiff, but the differences in treatment
raise issues of fact to be decided by a jury.

whether plaintiff was treated differently than similarly situated individuals, summary judgment must be denied on plaintiff's race-based equal protection claim.  However, I grant summary judgment on plaintiff's "class of one" claim.  Plaintiff makes no attempt to argue in opposition to defendant's motion for summary judgment that there was no rational basis for the difference in treatment.  In the absence of any such argument, this claim is deemed waived.

    C.    Qualified Immunity

In the alternative, defendants argue that their actions are protected by qualified immunity.  In assessing a defense of qualified immunity, the relevant question is whether a reasonable officer in the defendant's position could have believed the defendant's actions lawful in light of clearly established law.  See Anderson v. Creighton, 483 U.S. 635, 641 (1987).  No reasonable officer would have believed it lawful, in light of clearly established law, to discipline African-American employees more severely than Caucasian or Hispanic employees.  Because there are genuine issues of material fact going to whether defendants treated plaintiff differently than similarly situated Caucasian and Hispanic employees, I cannot determine at this stage whether defendants are entitled to qualified immunity.

III. Conclusion

For the foregoing reasons, defendants' motion for summary judgment [Doc. #30] is hereby granted in part and denied in part.

Plaintiff's motion for summary judgment [Doc. #37] is hereby denied.  Count two ("class of one") and counts three and four (procedural due process) are dismissed.

So ordered.

Dated at Hartford, Connecticut this 30th day of September 2006.

```
              _____/s/_____
                   Robert N. Chatigny
                United States District Judge
```