```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

CHRISTOPHER EVERSON                  :
                                     :
     Plaintiff,                      :
                                     :
V.                                   :   CASE NO. 3:04-CV-387 (RNC)
                                     :
THERESA LANTZ, JOHN ARMSTRONG,       :
NELVIN LEVESTER and                  :
ROBERT CARBONE,                      :
                                     :
     Defendants.                     :
```

                            RULING AND ORDER

Pending for decision is a supplemental motion for summary judgment filed by the defendants seeking dismissal of plaintiff's claim under 42 U.S.C. § 1983 that his employment with the Connecticut Department of Correction ("DOC") was terminated because of his race in violation of the Equal Protection Clause of the Fourteenth Amendment.  Plaintiff, an African American, alleges that he was disciplined more harshly for off-duty misconduct than similarly situated Caucasian and Hispanic employees.  In a prior ruling, summary judgment was granted to the defendants on the other claims in the complaint.  See Ruling and Order, September 30, 2006 (Doc. 48).  Since then, defendants have supplemented the record with additional materials showing that plaintiff was not treated differently than similarly situated individuals outside his protected group.  After careful review of the whole record, I conclude that plaintiff has failed to produce sufficient evidence to permit a jury to return a

verdict for him on the racial discrimination claim.  Accordingly, the defendants' supplemental motion for summary judgment on this claim is granted.[1]

I.   Facts

Plaintiff, while employed by the DOC as a corrections officer, was arrested on two occasions and charged with various off-duty offenses, including possession of marijuana and drug paraphernalia.  He reported the arrests and the DOC commenced investigations.  Plaintiff received accelerated rehabilitation on some of the charges, including the drug charges, which were dismissed after he successfully completed a period of probation.  Other charges were nolled.  Plaintiff failed to appear for a pre-disciplinary conference with the DOC, after which his employment was terminated.  He grieved the termination but the grievance was denied.  The matter then proceeded to arbitration.  Plaintiff did not participate in the arbitration process.  The arbitrator concluded that the termination of plaintiff's employment was supported by just cause.  This suit followed.

II.  Discussion

Summary judgment may be granted only if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To

---

[1] Plaintiff's cross-motion for summary judgment is denied.

avoid summary judgment, plaintiff must point to evidence that would allow a reasonable jury to return a verdict in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

Plaintiff's equal protection claim under § 1983 is analyzed using the same framework applied in employment-discrimination cases brought under Title VII (i.e., the burden-shifting framework of McDonnell Douglas v. Green, 411 U.S. 792 (1973)). See Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004).  To present a prima facie case, plaintiff must produce evidence that his employment was terminated in circumstances giving rise to an inference of discrimination based on race.  See Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004).  Plaintiff can satisfy this burden by showing that similarly situated employees outside his protected group who engaged in conduct of comparable seriousness were not terminated.  See Graham, 230 F.3d at 39.[2]  If he makes this showing, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the termination.  See id.  Once such a reason is proffered, the burden shifts back to the plaintiff to demonstrate by

---

[2] Whether employees are similarly situated ordinarily is an issue of fact for a jury to resolve. Graham, 230 F.3d at 38. However, a court may properly grant summary judgment when no reasonable jury could find that employees were similarly situated.  See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n. 2 (2d Cir. 2001).

competent evidence that the defendants' explanation is a pretext for discrimination, in other words, that the proffered explanation is not true and that he was terminated because of his race.  Id.

Plaintiff has satisfied his burden of presenting a prima facie case.  He points to more than fifty similarly situated corrections officers[3] who faced criminal charges but were not

---

[3] These include, for example:
  J.B., a white male corrections officer arrested and charged first with assault on a police officer, driving while intoxicated and criminal mischief and then again four months later with disorderly conduct and assault in the third degree. He was initially dismissed but then reinstated via stipulated agreement.  (Def. Mem. S.J. Ex. 29 at 6.)
  S.G., an Hispanic male corrections officer charged with sexual assault in the first degree and burglary in the first degree.  There is no record of any disciplinary action against him.  (Id. at 17.)
  D.D., a white male corrections officer charged with assault on a police officer, interfering with a police officer, criminal mischief in the third degree, and driving under the influence.  He was initially dismissed but then allowed to return via stipulated agreement.  (Def. Mem. S.J. Ex. 31 at 22.)

Among those charged with drug offenses, plaintiff points to:
  H.A., an Hispanic male corrections officer charged with driving while intoxicated, speeding, failure to obey a traffic signal, and possession of marijuana.  He was placed on administrative leave but then reinstated after two months.  (Def. Mem. S.J. Ex. 29 at 2.)
  C.C., a white male corrections officer charged with larceny in the sixth degree, possession of marijuana, possession and use of drug paraphernalia, and criminal trespass in the third degree.  He was placed on administrative leave while a DOC investigation progressed, but allowed to return to service thereafter.  (Id. at 9.)
  J.F., a white male corrections officer arrested and charged with disorderly conduct and possession of a controlled substance.  There is no mention of any discipline taken against
(continued...)

4

terminated.[4]  Defendants have satisfied their burden of articulating a nondiscriminatory reason for the termination. They state that plaintiff was terminated because he engaged in drug-related misconduct for which he received accelerated rehabilitation and failed to participate in the DOC's disciplinary process.  Defendants' explanation is supported by admissible evidence sufficient to support a jury finding that these are the true reasons for the termination.  Accordingly, to avoid summary judgment, plaintiff must offer proof that would permit a jury to find that the defendants' explanation is untrue and that his race played a role in the termination.

Plaintiff has not carried this burden.  The DOC's policy of treating drug offenses harshly has been sustained by the State Board of Mediation and Arbitration, which has consistently found that a drug offense provides just cause for terminating a corrections officer.  (See, e.g., Def. Supp. Mem. S.J. Ex. 5) ("This Arbitrator has found many times in the past that the

---

[3](...continued)
him.  (Id. at 16.)
    J.M., an Hispanic male charged with driving under the influence and possession of marijuana.  He was initially dismissed but allowed to return via a "last chance" stipulated agreement. (Id. at 29.)

[4]Defendants' objection that these comparators are not sufficiently similar is misplaced.  At the prima facie stage, the plaintiff's burden of production is "minimal."  James v. New York Racing Ass'n., 233 F.3d 149, 153 (2d Cir. 2000).  The defendants' objections are better reserved for the nondiscriminatory-reason and pretext stages of the analysis.

corrections operation cannot be run by officers who are involved in any way in the sale or use of narcotics.  To allow this would be to allow the inmate population, the corrections officers guarding the inmate population[,] and the public itself to be placed in harm's way.").  The disciplinary records defendants have produced in this case show that the DOC has consistently taken a hard line against drug offenders.  DOC arrest logs, appended as exhibit 29 to defendants' first motion for summary judgment, show that approximately 60% of DOC employees who were charged with a drug offense were terminated. (See id.)  In addition, the arrest logs show that drug offenders of all races were terminated at approximately the same rate, 58.33% for African-Americans (seven out of twelve) compared to 58.14% for Caucasians and Hispanics (twenty-five out of forty-three). (See id.)  Of those, like the plaintiff, with marijuana charges, one of two African-American officers was terminated (50%), compared with six of eleven Caucasian and Hispanic officers (55%).  Of those, like the plaintiff, with a non-distribution drug charge as well as additional charges, three out of five African-Americans (60%) were terminated compared to eight of fourteen Caucasians and Hispanics (57.14%). (See id.)

     In addition, the record confirms that plaintiff's refusal to participate in the disciplinary process was a significant factor in the termination of his employment.  The vast majority of the

comparators plaintiff points to participated in pre-disciplinary and arbitration proceedings.  Of the four Hispanic or Caucasian individuals in the arrest logs who were not terminated despite being similarly situated to the plaintiff in that they faced non-distribution drug charges accompanied by other charges, all participated in the disciplinary process through pre-disciplinary hearings or arbitration proceedings or both.[5]  This serves to

---

[5]These are:
       H.A., an Hispanic male corrections officer charged with driving while intoxicated, speeding, failure to obey traffic signals and possession of marijuana.  Defendants note that H.A. not only participated in the disciplinary process, but also had his charges nolled prior to returning to service, unlike plaintiff whose drug charges were only dismissed after a twenty-month period of probation under his accelerated-rehabilitation agreement.  (Def. Mem. S.J. Ex. 29 at 2.)
       C.C., a white male corrections officer arrested for sixth-degree larceny, possession of marijuana, possession of drug paraphernalia, and third-degree criminal trespass.  He participated in the disciplinary process and was allowed to return to work pursuant to a stipulated agreement.  Defendants note that the charges in this case were based on out-of-state conduct, making them more difficult to prove and that the officer participated in a Step Three hearing at the Office of Labor Relations.  (Id. at 9.)
       J.F., a white male corrections officer arrested for disorderly conduct and possession of a controlled substance.  He availed himself of the negotiation process at arbitration and entered into a stipulated agreement.  In addition, defendants note that he had his charges nolled prior to returning to work, whereas plaintiff's drug charges remained pending during his period of probation. (Id. at 16.)
       J.M., an Hispanic male corrections officer arrested for driving under the influence and possession of marijuana.  He was dismissed but then allowed to return to work on a "last chance" stipulated agreement.  The defendants note that J.M. produced drug tests taken immediately after his arrest showing that he had no marijuana in his system, making it difficult for the state to prove its case during the disciplinary process.  Needless to say,
(continued...)

explain why plaintiff was treated more harshly than other officers who were charged with off-duty drug offenses accompanied by other offenses and yet were not terminated.

In his response to the defendants' supplemental motion for summary judgment, plaintiff contends that he should be compared with all officers arrested for off-duty misconduct, not just drug offenders. But he offers no proof that the DOC's policy and practice of treating drug offenders more harshly than others is a pretext for racial discrimination. Plaintiff also contends that participation in the DOC's disciplinary process is irrelevant. He asserts that the DOC's process addresses whether there is good cause for a termination, not whether the constitutional standard of equal protection is satisfied. This argument misses the

---

[5](...continued)
J.M.'s participation in this process was material to its favorable resolution in his case. (Id. at 29.)

Two other individuals had similar charges to the plaintiff and were not directly addressed by defendants. P.R., a white male teacher, charged with driving while intoxicated and possession of marijuana, resigned from state service after having the possession charge nolled. (Id. at 40.) Defendants have elsewhere noted that plaintiff never sought to resign from his position. In addition, there are conflicting records with regard to A.C., an Hispanic male corrections officer charged with possession of marijuana, driving while intoxicated, and failure to wear a seatbelt. The Department's arrest log shows that he was charged with these offense in 2005 and placed on administrative leave. (Id. at 11.) However, in the disciplinary log, there is no mention of these offenses; rather A.C. is cited only for tardiness and exhaustion of sick leave. (Def. Mem. S.J. Ex. 31 at 17.) The lack of information surrounding these two comparators is far from sufficient to establish that the defendants articulated non-discriminatory reasons for terminating plaintiff were merely a pretext for discrimination.

point.  Defendants explain that plaintiff was terminated while a few other officers charged with similar off-duty misconduct were not because the others took advantage of the opportunity to defend themselves and in some cases negotiated stipulated agreements allowing them to return to state service.  Plaintiff emphasizes that he was not notified of his opportunity to participate in a pre-disciplinary hearing until after the hearing was held.  It is undisputed, however, that several attempts were made to contact him to schedule a pre-disciplinary conference and the conference was rescheduled twice when he failed to appear. (See Def. Mem. S.J. Exs. 9, 10, 15, 16, 17, 18.)[6]

IV.  Conclusion

Accordingly, the defendants' supplemental motion for summary judgment (doc. # 114) is hereby granted.  Plaintiff's cross-motion for summary judgment (doc. # 121) is denied.  The Clerk may close the file.

So ordered this 3d day of February 2009.

/s/ RNC
Robert N. Chatigny
United States District Judge

---

[6] Because plaintiff has failed to present sufficient evidence to support a finding that his employment was terminated because of his race, it is unnecessary to consider defendants' argument that they are entitled to qualified immunity.